**Dorian KING and Diane King Jtwros, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**LIVENT, INC., Garth H. Drabinsky, Myron I. Gottlieb, Maria Messina, Livent (U.S.) Inc., Livent Capital, Inc., Livent International, Inc., Livent Realty (Chicago), Inc. and Deloitte & Touche Chartered Accountants, Defendants.**

No. 98 Civ. 7161(RWS).

United States District Court, S.D. New York.

Feb. 17, 1999.

188

Pomerantz Haudek Block Grossman & Gross by Stanley M. Grossman, Patrick V. Dahlstrom, New York City, Law Offices of Lionel Z. Glancy, by Lionel Z. Glancy, Peter A. Binkow, Los Angeles, CA, for Plaintiffs.

Skadden, Arps, Slate, Meagher & Flom by Douglas M. Kraus, William Bernarduci, New York City, for Defendants.

Kirkland & Ellis by Frank M. Holozubiec, New York City, for Unofficial Committee.

*OPINION*

SWEET, District Judge.

Dorian King and Diane King Jtwros (the "Kings") have moved under Section 3 of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(a)(3) (the "PSLRA"), for appointment as lead plaintiffs and the appointment of lead counsel in this securities class action. For the reasons set forth below, the motion is denied.

### *Prior Proceedings*

On April 2, 1998, the Kings purchased a face amount of $100,000 of Livent $125 million 9 3/8% senior notes due 2004 (the "Notes"). On October 9, 1998 the Kings filed their complaint on behalf of the class of purchasers of the Notes alleging violations of the federal securities laws against Livent, Inc. ("Livent"), the individual defendants, Garth Drabinsky ("Drabinsky"), Myron Gottlieb ("Gottlieb") and Maria Messina ("Messina"), five subsidiaries of Livent (the "Livent Subsidiaries"), and Deloitte & Touche during a class period from October 10, 1997 through August 10, 1998. The complaint alleged that Livent, Drabinsky, Gottlieb, Messina, the Livent Subsidiaries and Deloitte & Touche made false and misleading statements in the Livent Registration Statement and Prospectus in the offering of the Notes in violation of Sections 11, 12(2), and 15(a) of the Securities Act and knowingly and/or recklessly issued materially false and misleading financial statements to the securities markets in violation of Section 10(b) and 20(a) of the Exchange Act, and Securities and Exchange Commission ("SEC") Rule 10b–5 and that Livent's suspensions of Drabinsky and Gottlieb, as well as other acts taken against them constitute a "change of control" as defined in the applicable provisions contained in the Registration Statement and Prospectus for the Notes, which warrants declaratory relief by the Court. On the same day the complaint was filed, the Kings also filed the instant motion for appointment as lead plaintiffs and the appointment of Pomerantz Haudek Block Grossman & Gross LLP (the "Pomerantz Firm") and the Law Offices of Lionel Z. Glancy ("Glancy") as co-lead counsel.

This action is one of over a dozen security class actions filed against Livent. It is the only action alleging Securities Act violations involving the Notes.

Opposition to the Kings' motions was filed by defendants Livent and Messina. A letter of opposition was also filed by counsel for an unofficial committee designated as the Unofficial Committee of Holders of Livent 9% Senior Notes Due 2004 (the "Unofficial Committee"), claiming to represent institutional holders of $122 million of the $125 million of the Notes.

On November 18, 1999, the return date of the motion, counsel for Livent announced that Livent had filed for protection under the Bankruptcy Court that morning. The motion was considered fully submitted at that time.

### Discussion

### *The Motion for Appointment of Lead Plaintiffs and Lead Counsel is Defective*

■ Section 3A of the PSLRA requires early notice of the filing of any private securities class action to be published in "a widely circulated national business-oriented publication or wire service" and that any member of the purported class may move to serve as lead plaintiff not later than sixty days after publication of the notice (PSLRA § 3(A)(i)).[1]

According to the letter submission by the Unofficial Committee, the Kings' motion is defective for failure to comply with Section 3(A)(i) in that no notice was published relating to a class action directed to the Securities Act violations relating to the Notes, although a number of published notices referred to securities class actions involving Livent "securities." The Kings rely in particular on one such notice which appears facially to have been published on August 12 in PR Newswire referring to a class action complaint filed by Wolf Popper Ltd. Although it is assumed that the complaint referred to a class of holders of common stock, the publication referred only to a class of persons "who purchased securities issued by Livent, Inc. (Nasdaq LVNTF)." The notice also referred to the requirement to file any application as lead plaintiff by October 9, 1998. The Kings urge that this publication satisfies their Section 3(A) requirements.

Even if it is assumed that the publication was in an appropriate wire service and that "securities" can be understood to include the Notes, the Kings have failed to meet the early notice requirements.

The publication must be no later than twenty days after the filing of the complaint, and the complaint at issue here was filed on October 9. The notice being relied upon was published on August 12. Section 3(A)(ii) *i.e.,* "Multiple Actions" does relieve plaintiffs in later filed actions from the notice requirement, "if more than one action on behalf of *a* class asserting substantially the same claims of claims arising under this chapter is filed" (emphasis added). The class which the Kings seek to represent, the holders of the Notes, is not the same class as the previously filed actions involving holders of Livent common stock.

The timetable is significant for it provides an interested class member a sixty day period after the notice of the filing of the complaint to review the complaint and to determine whether or not to seek appointment as a class representative. The holders of the Notes did not have the opportunity to learn through a published notice of the filing of the

---

1. The PSLRA provides in relevant part:
   (3) Appointment of lead plaintiff
   (A) Early notice to class members
   (i) In general
   Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated business oriented publication or wire service, a notice advising members of the purported plaintiff class-
   (I) of the pendency of the action, the claims asserted therein, and the purported class period; and

   (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.
   (ii) Multiple actions
   If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).

King's complaint and of the class sought to be represented, nor did they have a sixty day period to move to serve as lead plaintiff after publication of the required notice. It must be assumed that Congress intended the publication of a notice of filing an action to enable interested class members to review the complaints and the qualifications of the putative lead plaintiff as required by the certification filed with the complaint under PSLRA Section 3(A)(i).

The procedure adopted by the Kings did not adhere to the requirements of the PSLRA, and their motion for appointment as lead plaintiff is denied at this time.

### The Defendants Had Standing to Oppose the Motion

■ The Kings maintain that the defendants do not have standing under the "PSLRA" to challenge their application for appointment as lead plaintiffs. There is a split of authority on the issue of whether a defendant has standing to oppose a motion pursuant to the provisions of the PSLRA to appoint a lead plaintiff and class counsel in a federal securities law class action, such as this. *Compare Howard Gunty Profit Sharing v. Ouantum Corp.*, Civ. No. 96–20711 SW, slip op. at 6–7 (N.D.Cal. Feb. 6, 1997) ("[W]hen ... there are no other potential lead plaintiffs to challenge a moving party, the Court must rely on the defendants to insure that the requirements of [the Reform Act] are satisfied") *and In re Read–Rite Corp. Sec. Litig.*, No. C–97–20059 RMW, slip op. at 3 (N.D.Cal. May 28, 1997) ("defendants are not prohibited from challenging whether the most adequate plaintiff presumption should be adopted initially by the court"), *with Greebel v. FTP Software, Inc.*, 939 F.Supp. 57, 60 (D.Mass.1996) ("The test of [the Reform Act for the appointment of lead plaintiff] clearly indicates that this issue is one over which only potential plaintiffs may be heard").

Contrary to the Court's holding in *Greebel,* nothing in the text of the Reform Act precludes or limits the right of defendants to be heard on this issue. *See Howard Gunty,* No. 96–20711 SW, at 6–7; *In re Read–Rite Corp. Sec. Litig.,* No. C–97–20059 RMW, at 3. Section (a)(3) of the PSLRA contains no reference to any participation of a defendant in the appointment process. As the court stated in *Howard Gunty:*

> In sum, permitting defendants to make a limited facial challenge to a plaintiff's motion for appointment of lead plaintiff does not disrupt the statutory framework Congress set forth in § 78u–4(a)(3)(B)(iii). Rather it is consistent with the goal of alleviating the abuses of the class action device in securities litigation.

*Howard Gunty,* No. 96–20711 SW, at 7.

The only discovery rights with respect to the appointment are granted to a plaintiff demonstrating a reasonable basis for inadequate representation. It is on this basis, and the lack of enunciation of any affirmative right, that courts indicating a lack of standing of defendants to oppose the appointment of a lead plaintiff presumably have relied upon "the plain language of the Act." *Fischler v. AmSouth Bancorporation, et al.,* 1997 WL 118429 at *2 (M.D.Fla. February 6, 1997).

When the underlying issue of class certification under Rule 23, Fed.R.Civ.P. is presented, however, there is no question but that any party can be and should be heard. According to its legislative history, the PSLRA was enacted in response to perceived abuses of the class action procedure. *See In re Olsten Corp. Securities Litig.,* 3 F.Supp.2d 286, 293 (E.D.N.Y.1998) (citing H.R.Rep. No. 104–369 (1995), reprinted in 1995 U.S.C.C.A.N. 730). Congress was concerned with, among other things, the use of professional plaintiffs and the plaintiffs' lawyers' "race to courthouse," the outcome of which was determinative of the lead plaintiff. *See* S.Rep. No. 104–98 (1995), (reprinted in 1995 U.S.C.C.A.N. 679) ("Courts traditionally appoint lead plaintiff and lead counsel in class action lawsuits on a first come, first serve basis.... The Committee believes that the selection of the lead plaintiff should rest on considerations other than a speedy filing of the complaint"). By enacting the PSLRA, Congress intended to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise con-

trol ..." H.R.Rep. No. 104–369 (1995) (reprinted in 1995 U.S.C.C.A.N. 730).

On balance, a therapeutic appointment process such as is envisaged by the PSLRA will work better with more information than less. Indeed, the defendants in this action have supplied certain of the information on which this motion is decided. The better view of this issue is set forth in *Howard Gunty,* No. 96–20711 SW, at 6–7 and *In re Read–Rite Corp. Sec. Litig.,* No. C–97–20059 RMW, at 3, permitting the defendant to be heard. *Cf. Powers v. Eichen,* 961 F.Supp. 233 (S.D.Ca.1997).

### The Appointment of Lead Counsel is Denied

Since the appointment of the Kings has been denied, the motion for the approval of the Pomerantz Firm and Glancy as co-lead counsel will also be denied with leave to renew, since the PSLRA provides that the class member designated as lead plaintiff may, subject to the approval of the court, select and retain class counsel. *See* PSLRA § (3)(B)(v). Consistent with congressional intent, this selection should not be disturbed unless "necessary to protect the interest of the plaintiff class." *See* Statement of Managers– The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691–08, at H13700, H.R. Conf. Rpt. No. 104–369, at 62, 104th Cong. 1st Sess (Nov. 28, 1995). A question of conflict of interest has been raised resulting from the representation in a previously filed securities class action by the Pomerantz firm of plaintiffs who were holders of the common stock. Although the issue is troubling, it need not be resolved at this time.

### Conclusion

For the reasons stated above, the motions to approve the Kings as lead plaintiffs and the Pomerantz Firm and Glancy as lead counsel are denied.

It is so ordered.